**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 20-61915-CIV-COOKE

GOYARD ST-HONORE,

           Plaintiff,

vs.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

           Defendants.

_____/

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF**
**TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND**
**ORDER RESTRAINING TRANSFER OF ASSETS**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

       Plaintiff, Goyard St-Honore ("Goyard"), hereby does apply, on an *ex parte* basis, for entry of a temporary restraining order and an order restraining transfer of assets, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" ("Defendants") pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a). In support thereof, Goyard submits the following memorandum of law.

**I.**    <u>**INTRODUCTION**</u>

       Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing counterfeits and confusingly similar imitations of one or more of Goyard's registered trademarks within this district and throughout the United States by operating e-commerce stores established via third-party marketplace platforms under their seller identification names identified on Schedule "A" hereto (the "Seller IDs"). Specifically, Goyard has obtained evidence clearly demonstrating that (a) Defendants are engaged in the advertisement, offering for sale, and sale of counterfeit and infringing versions of Goyard's goods; and (b) Defendants accomplish their sales of

counterfeit and infringing goods via the Internet through the use of, at least, e-commerce stores operated via Internet marketplace platforms under the Seller IDs. Based on this evidence, Goyard's Complaint alleges claims for trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement.

Defendants' unlawful activities have deprived and continue to deprive Goyard of its right to determine the manner in which its trademarks are presented to the public. Indeed, Defendants have and continue to wrongfully trade and capitalize on Goyard's reputation and goodwill and the commercial value of Goyard's trademarks. By their activities, Defendants are defrauding Goyard, certain non-party businesses, and the consuming public for their own benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Goyard ongoing irreparable harm. Accordingly, Goyard is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful use of Goyard's trademarks.

Goyard also seeks to restrain the illegal profits generated by Defendants. Goyard has obtained evidence that Defendant Numbers 1-17, who operate their Seller IDs via Amazon.com ("Amazon") necessarily use money transfer and/or retention/processing services with Amazon as a method to receive monies generated through the sale of counterfeit products. Amazon operates as a money transmitter for sales made on Amazon and as such, Amazon has the ability to identify, and restrain, the payment accounts associated with the Defendants who use their respective Seller IDs via Amazon to conduct their commercial transactions. Additionally, Defendant Numbers 18-34, who operate their Seller IDs via Wish.com ("Wish"), have their payments processed on their behalf using an aggregate escrow account in the name of ContextLogic Inc. ("ContextLogic"). Finally, Defendant Numbers 35-151, who operate their Seller IDs via DHgate.com, have their payments processed on their behalf via DHgate.com's third-party payment service, DHpay.com. The Lanham Act allows Goyard to recover the illegal profits gained through Defendants' distribution and sales of counterfeit and infringing goods. See 15 U.S.C. § 1117(a). In light of the inherently deceptive nature of the counterfeiting business, Goyard has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. Accordingly, to preserve the

disgorgement remedy, Goyard seeks an *ex parte* order restraining Defendants' assets, including specifically, funds transmitted through Amazon, ContextLogic, and the DHgate platform.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Rights.

Goyard is the owner of all rights in and to the federally registered trademarks identified in Paragraph 5 of the Declaration of Jean-Laurent Thierry in Support of Plaintiff's Application for Temporary Restraining Order (the "Goyard Marks"), which are used in connection with the manufacture and distribution of high quality luxury goods in the categories identified therein. (See Declaration of Jean-Laurent Thierry in Support of Plaintiff's Application for Temporary Restraining Order ["Thierry Decl."] ¶¶ 4-5, filed herewith; see also United States Trademark Registrations for the Goyard Marks [the "Goyard Trademark Registrations"] attached as Comp. Ex. 1 to the Complaint, incorporated herein by reference.) The Goyard Marks are symbols of Goyard's quality, reputation, and goodwill and have never been abandoned. (See Thierry Decl. ¶¶ 6-7.) Moreover, Goyard has expended substantial time, money, and other resources developing and otherwise promoting its trademarks. (Id.) Accordingly, the Goyard Marks qualify as famous marks as the term is used in 15 U.S.C. § 1125(c)(1).

Furthermore, Goyard has extensively used the Goyard Marks in the United States in interstate commerce in association with its high quality luxury goods, and has carefully monitored and policed the use of the Goyard Marks. (See Thierry Decl. ¶¶ 6-8.) At all times relevant hereto, Defendants have been aware of Goyard's (a) ownership of the Goyard Marks; (b) exclusive rights to use such Marks; and (c) substantial goodwill embodied in, and favorable recognition for, the Goyard Marks.

### B.   Defendants Wrongfully Use Plaintiff's Trademarks.

Defendants do not have, nor have they ever had, the right or authority to use the Goyard Marks for any purpose. (Thierry Decl. ¶¶ 9, 12-13.) However, despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale, through their respective Seller IDs, goods bearing counterfeit and infringing trademarks that are exact copies of one or more of the Goyard Marks, without authorization ("Defendants' Goods"). (Thierry Decl. ¶¶ 9-13; Declaration of T.

Raquel Wiborg-Rodriguez in Support of Plaintiff's Application for Temporary Restraining Order ["Wiborg-Rodriguez Decl."] ¶ 2, filed herewith; Declaration of Kathleen Burns in Support of Plaintiff's Application for Temporary Restraining Order ["Burns Decl."] ¶ 4, filed herewith; see also relevant web page captures from Defendants' Internet based e-commerce stores operating under the Seller IDs displaying the Goyard branded items offered for sale ["Defendants' Seller IDs"] attached as Comp. Exs. 1, 2, and 3 to the Burns Decl.)

Given Defendants' slavish copying of the Goyard Marks, Defendants' Goods offered for sale and sold under identical marks are indistinguishable to consumers, both at the point of sale and post-sale. By using the Goyard Marks, Defendants have created a false association between their counterfeit and infringing goods and e-commerce stores, and Goyard. Such false association is in violation of 15 U.S.C. § 1125(a) and is causing and will continue to cause Goyard irreparable harm and damage. (See Thierry Decl. ¶¶ 8, 17.)

As part of its ongoing investigation regarding the sale of counterfeit and infringing products, Goyard's counsel retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing Goyard branded products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit Goyard branded products. (Thierry Decl. ¶ 10; Burns Decl. ¶ 3; Wiborg-Rodriguez Decl. ¶ 2.) Through Amazon.com, Wish.com, and DHgate.com, Invisible accessed the Internet based e-commerce stores operating under Defendants' Seller IDs, placed orders from each Defendant for the purchase of various products – all bearing counterfeits of, at least, one of the Goyard Marks at issue in this action – and requested each product be shipped to one of its addresses in the Southern District of Florida. (Burns Decl. ¶ 4 and Comp. Exs. 1, 2, and 3 thereto.) Each order was processed entirely online, and following the submission of its orders, Invisible received information for finalizing payment[1] for the products ordered via Defendants'

---

[1] Invisible was instructed to not transmit the funds to finalize the sale for the orders for most of the Defendants so as to avoid adding money to Defendants' coffers. (Wiborg-Rodriguez Decl. ¶ 2 n.2; Burns Decl. ¶ 4 n.1.)

respective payee[2] as identified on Schedule "A" hereto.  (See id.)  At the conclusion of the process, the detailed web page captures and images of the various Goyard branded products ordered via Defendants' Seller IDs, together with photographs of some of the products received, were sent to Goyard's representative, Jean-Laurent Thierry, for inspection. (See Burns Decl. ¶ 4; Thierry Decl. ¶ 11; Wiborg-Rodriguez Decl. ¶ 2.)

Goyard's representative, Jean-Laurent Thierry, who has the ability to identify the distinctions between genuine Goyard branded merchandise and counterfeit copies of the same, conducted a review and visually inspected the detailed web page captures and photographs reflecting the Goyard branded products ordered by Invisible Inc and determined the products were not genuine versions of Goyard's goods.  (Thierry Decl. ¶¶ 12-13.)

Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Also, using the "ocular test" of direct comparison, courts have found that even marks that are slightly modified from the registered marks copied are to be considered counterfeit marks. See Fimab-Finanziaria Maglificio vs. Helio Import/Export, Inc., 601 F. Supp. 1 (S.D. Fla. 1983).  A comparison of the Goyard Marks to the marks used by Defendants in connection with the promotion and sale of Defendants' Goods reveals the obvious

---

[2] Defendant Numbers 1-17 operate via the non-party e-commerce marketplace platform, Amazon.com.  Amazon.com is an e-commerce marketplace that allows Defendants to conduct their commercial transactions privately via Amazon's payment processing and retention service, Amazon Payments, Inc. As such, Defendants' payment information is not publicly disclosed.  (Wiborg-Rodriguez Decl. ¶ 4; Burns Decl. ¶ 4 n.2.)

Defendant Numbers 18-34 operate via the non-party e-commerce marketplace platform, Wish.com ("Wish"), which is operated by ContextLogic Inc. ("ContextLogic"). The payee for the orders placed on Wish.com identifies "PayPal *Wish," which is the aggregate PayPal account for purchases made via Wish.com.  (Wiborg-Rodriguez Decl. ¶ 5; Burns Decl. ¶ 4 n.2.)

Defendant Numbers 35-151operate via the non-party Internet marketplace platform, DHgate.com, and have their payments processed on their behalf via DHgate.com's third-party payment platform, DHpay.com. The DHgate.com and DHpay.com platforms are operated by the Dunhuang Group, who utilizes Camel FinTech Inc to process transactions on behalf of DHgate.com to its customers.  (Wiborg-Rodriguez Decl. ¶ 6; Burns Decl. ¶ 4 n.2.)

counterfeit and infringing nature of Defendants' Goods. (<u>Compare</u> Goyard's Trademark Registrations [Comp. Ex. 1 to the Compl.] <u>with</u> Defendants' Seller IDs [Comp. Exs. 1, 2, and 3 to the Burns Decl.].)  Defendants' Goods are being promoted, advertised, offered for sale, and sold by Defendants to consumers within this district and throughout the United States. (<u>See</u> Burns Decl. ¶ 4.)  Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them.   Defendants are also falsely representing to consumers that their counterfeit and infringing branded goods are genuine, authentic, endorsed, and authorized by Goyard. Ultimately, Defendants' Internet activities amount to nothing more than illegal operations, infringing on Goyard's intellectual property rights.   The Seller IDs and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Goyard.

## III.   <u>ARGUMENT</u>

### A.   **A Temporary Restraining Order is Essential to Prevent Immediate Injury.**

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b). This is such a case.

Defendants herein fraudulently promote, advertise, sell, and offer for sale goods bearing counterfeits and infringements of the Goyard Marks via their e-commerce stores using the Seller IDs.  By their actions, Defendants are creating a false association in the minds of consumers between Defendants and Goyard.   Specifically, Defendants are wrongfully using counterfeits and infringements of the Goyard Marks to increase consumer traffic to their illegal operations. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of the Goyard Marks and would preserve the status quo until such time as a hearing can be held.  <u>See</u> <u>Dell Inc. v.</u> <u>BelgiumDomains, LLC</u>, Case No. 07-22674 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Absent a temporary restraining order without notice, Defendants can and, based upon Goyard's counsel's past experience, will significantly alter the status quo before the Court can determine the parties' respective rights.  In particular, the Internet based e-commerce stores at issue are under Defendants' complete control.  Thus, Defendants have the ability to modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs. (See Wiborg-Rodriguez Decl. ¶ 3.)  Such modifications can happen in a short span of time after Defendants are provided with notice of this action. (Id.)  Thus, Defendants can easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's Application for Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo.  (Id.)  In short, absent a temporary restraining order, Defendants could completely erase the status quo.  (Id.)  As Defendants engage in illegal counterfeiting and infringing activities, Goyard has no reason to believe Defendants will make their assets available for recovery pursuant to an accounting of profits or will adhere to the authority of this Court any more than they have adhered to federal trademark law. (Id.)

Moreover, federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"); Abercrombie & Fitch Trading Co. v. bao li Store, Case No. 20-cv-60167-MGC (S.D. Fla. Jan. 31, 2020) (Order granting *Ex Parte* Application for Temporary Restraining Order and restraining defendants' assets and defendants' related assets).  This Court should prevent an injustice from occurring by issuing an *ex parte* temporary restraining order which precludes Defendants from continuing to display their infringing content via the e-commerce stores or modifying or deleting any related content or data.  Only such an order will prevent ongoing irreparable harm and maintain the status quo.

### B.    Standard for Temporary Restraining Order and Preliminary Injunction.

In this Circuit, the standard for obtaining a temporary restraining order and the

standard for obtaining a preliminary injunction are the same.  See Emerging Vision, Inc. v. Glachman, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing Siegel v. LePore, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 234 F.3d 1163 (11th Cir. 2000)).  In order to obtain a temporary restraining order or a preliminary injunction, a party must establish (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets).  Goyard's evidence establishes all of the relevant factors.

### 1.    Probability of Success on the Merits of Goyard's Claims.

### a)    Likelihood of Success on Counterfeiting Claim.

Title 15 U.S.C. §1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114 (2018).  Goyard must demonstrate (1) ownership of the trademarks at issue; (2) Defendants' use of the trademarks is without Goyard's authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Goods.  See 15 U.S.C. § 1114(1).   Goyard's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1114.

The first two elements of Goyard's trademark counterfeiting and infringement claims are easily met. The Goyard Marks are owned by Goyard and registered on the Principal Register of the United States Patent and Trademark Office, and all but one of the marks at issue herein have become "incontestable" under 15 U.S.C. §§ 1058 and 1065.[3]  (See Thierry Decl. ¶ 5; see also Goyard Trademark Registrations, attached as Comp. Ex. 1 to the Compl.) See Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F. Supp. 1546, 1554 (S.D. Fla. 1990) ("Incontestable status provides conclusive evidence of the registrant's

---

[3] Trademark Registration 5,532,309 is not incontestable.

exclusive right to use the registered mark, subject to §§ 15 and 33(b) of the Lanham Act."). Moreover, Defendants have never had the right or authority to use the Goyard Marks. (Thierry Decl. ¶¶ 9, 12-13.)

The Eleventh Circuit uses a seven-factor test in determining the third element, likelihood of confusion. See Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1506 (11th Cir. 1985). These factors, as outlined in Safeway Store, Inc. v. Safeway Discount Drugs, Inc., are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. See 675 F.2d 1160, 1164 (11th Cir. 1982); see also Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1303 (11th Cir. 1997). The seven factors listed are to be weighed and balanced and no single factor is dispositive. (Id.)

### (1)    Strength of the Marks.

A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. See Lone Star Steakhouse and Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 362 (11th Cir. 1997). The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992). Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection. (See id.) It cannot be seriously disputed that the Goyard Marks are strong, arbitrary and fanciful marks. (See Thierry Decl. ¶¶ 4-5; see also Goyard Trademark Registrations, attached as Comp. Ex. 1 to the Compl.)

The Goyard Marks have also acquired secondary meaning. Goyard has expended substantial time, labor, skill, and expense in developing and promoting the Goyard Marks. (Thierry Decl. ¶¶ 6-7.) The Goyard Marks enjoy widespread recognition and are prominent in the minds of consumers. Indeed, products bearing the Goyard Marks are among the most widely recognized trademarks in the United States for luxury goods. (Id.)

### (2)    Similarity of the Marks.

Likelihood of confusion is greater when an infringer uses the exact trademark. Turner Greenberg Assocs. v. C & C Imps., 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). Defendants are using marks that are identical to the Goyard Marks. (Compare Goyard's

Trademark Registrations [Comp. Ex. 1 to the Compl.] with Defendants' Seller IDs [Comp. Exs. 1, 2, and 3 to the Burns Decl.].)

### (3)    Similarity of the Goods.

"The greater the similarity between the products and services, the greater the likelihood of confusion." John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983). Defendants are selling the same types of goods Goyard sells. (Thierry Decl. ¶¶ 4-5; see generally Defendants' Seller IDs, attached as Comp. Exs. 1, 2, and 3 to the Burns Decl.)  Because they bear counterfeits of the Goyard Marks, Defendants' Goods appear virtually identical to Goyard's genuine products in the consumer market.  Standing alone, this similarity can be held sufficient to establish a likelihood of confusion. See John H. Harland Co., 711 F.2d at 976.

### (4)    Similarity of Sales Method and (5) Advertising Method.

Convergent marketing channels increase the likelihood of confusion. See Turner Greenberg Assocs., 320 F. Supp. 2d at 1332.  Both Goyard and Defendants sell and advertise their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Southern District of Florida. (See Thierry Decl. ¶ 5; Burns Decl. ¶ 4.)  Thus, the conditions of purchase for both parties are unmistakably identical.  Moreover, both target the same general U.S. consumers, and as such, Goyard is directly competing with Defendants' products.

### (5)    Defendants' Intent.

This district has held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d at 1333 (citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).  In a case of clear-cut copying, it is appropriate to infer Defendants intended to benefit from Goyard's reputation, to Goyard's detriment. See Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Fla., 546 F. Supp. 987, 996 (S.D. Fla. 1982).

(6)      **Evidence of Actual Confusion.**

Actual confusion is unnecessary to establish infringement since the test is likelihood of confusion.  See Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1340 (11th Cir. 1999). In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available. Defendants are advertising, offering to sell and selling counterfeit goods identical in appearance to those sold by Goyard. (Thierry Decl. ¶¶ 4-5, 9-13; Burns Decl. ¶ 4 and Comp. Exs. 1, 2, and 3 thereto.) Even if buyers are told of the bogus nature of Defendants' Goods, other consumers viewing Defendants' Goods in a post-sale setting will obviously be confused, because they are viewing goods bearing the Goyard Marks, which undeniably creates the impression they are viewing genuine goods sold or authorized by Goyard.  Such post-sale confusion is entirely actionable.  See Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc., 706 F. Supp. 855, 859 (S.D. Fla. 1989) ("The likelihood of confusion need not occur at wholesale level when the end user will be confused.").

The seven factors weigh only in Goyard's favor. Goyard has therefore shown a probability of success on the merits of its trademark counterfeiting and infringement claim.

**b)      Likelihood of Success on False Designation of Origin Claim.**

As with a trademark infringement claim, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue.  Two Pesos, 505 U.S. at 780.  Whether the violation is called infringement, unfair competition, or false designation of origin, the test is identical – is there a "likelihood of confusion?" Id. Thus, because Goyard has established the merits of its trademark counterfeiting and infringement claims against Defendants, a likelihood of success is also shown as to Goyard's claim for false designation of origin.

**c)      Likelihood of Success on Common Law Unfair Competition Claim.**

Whether a defendant's use of a plaintiff's trademarks creates a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida.  See Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may

use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims."). Goyard has established there is a likelihood of confusion regarding Defendants' use of the Goyard Marks on their counterfeit and infringing products. Accordingly, Goyard is also likely to succeed on the merits of its common law unfair competition claim.

                      **d)**     **Likelihood of Success on Common Law Trademark Infringement Claim.**

The analysis of liability for Florida common law trademark infringement is also the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. PetMed Express, Inc. v. MedPets.com, Inc., 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004). As discussed above, Goyard has satisfied the three elements of its trademark counterfeiting and infringement claim against Defendants, establishing that a likelihood of confusion exists herein. Therefore, Goyard is also likely to succeed on the merits of its common law trademark infringement claim.

           **2.**     **Goyard is Suffering Irreparable Injury.**

As the Eleventh Circuit expressed it: "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." Ferrellgas Ptnrs., L.P. v. Barrow, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998). Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its reputation as a result of a defendant's activities. Id. A likelihood of confusion exists herein because Defendants have engaged in counterfeiting activities using spurious designations indistinguishable from the Goyard Marks.

           **3.**     **The Balance of Hardship Tips Sharply in Goyard's Favor.**

Goyard has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Goyard Marks. (Thierry Decl. ¶¶ 6-8.) Should Defendants be permitted to continue their trade in counterfeit goods, Goyard will suffer substantial losses and damage to its reputation. (See id. at ¶¶ 8, 17.) However, Defendants will suffer no legitimate hardship in the event a temporary restraining order is

issued, because Defendants have no right to engage in their present counterfeiting and infringing activities.

### 4. The Relief Sought Serves the Public Interest.

Defendants are engaged in illegal activities and are directly defrauding the consuming public by palming off Defendants' Goods as Goyard's genuine goods. The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp., 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

### C. The Equitable Relief Sought is Appropriate.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### 1. Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Goyard's Trademarks is Appropriate.

Goyard requests an order requiring Defendants immediately cease all use of the Goyard Marks, or substantially similar marks, including on or in connection with all e-commerce stores owned and operated, or controlled by them. Such relief is necessary to stop the ongoing harm to Goyard's trademarks and goodwill and to prevent Defendants from continuing to benefit from the increased consumer traffic to their illegal operations created by their unlawful use of the Goyard Marks. Many courts, including this Court, have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks.[4]

---

[4] See Michael Kors, LLC v. ActiveJewelry, No. 15-cv-61659-MGC, 2015 U.S. Dist. LEXIS 180216 (S.D. Fla. Aug. 18, 2015) (Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order); Abercrombie & Fitch Trading Co. v. 7starzone.com, No. 14-cv-60087-MGC, 2014 U.S. Dist. LEXIS 12211 (S.D. Fla. Jan. 31, 2014) (same). See also Abercrombie & Fitch Trading Co. v. bao li Store, Case No. 20-cv-60167-MGC (S.D. Fla. Jan. 31, 2020) (same); Apple Corps Limited v. avila norma shop, Case No. 19-cv-61858-MGC (S.D. Fla. Sept. 10, 2019) (same); Louis Vuitton Malletier v.Caromy&LV, Case No. 19-cv-61021-MGC (S.D. Fla. Apr. 26, 2019) (same); Cartier Int'l A.G. v. BUY1NG, Case No. 19-cv-60406-MGC (S.D. Fla. Feb. 26, 2019) (same). Accord Parsons Xtreme Golf,

**2.      Entry of an Order Prohibiting Transfer of the Seller IDs During the Pendency of this Action is Appropriate.**

To preserve the status quo, Goyard seeks an order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Seller IDs being used and controlled by Defendants to other parties. Once they become aware of litigation against them, Defendants operating online can easily, and often will, change the ownership or modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, and thereby thwart the Court's ability to grant meaningful relief. (Wiborg-Rodriguez Decl. ¶ 3.) Here, an interim order prohibiting Defendants from transferring their e-commerce stores operating under the Seller IDs poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Goyard full relief.[5]

---

LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", No. 19-cv-60310-BLOOM, 2019 U.S. Dist. LEXIS 79074 (S.D. Fla. Feb. 7, 2019, docketed Feb. 8, 2019) (same); YETI Coolers, LLC v. Allramblerdeal.com, No.18-62811-CIV-DIMITROULEAS, 2018 U.S. Dist. LEXIS 225651 (S.D. Fla. Nov. 21, 2018, docketed Nov. 26, 2018) (same); Gucci Am., Inc. v. BGAADB, No. 18-cv-62227-UNGARO, 2018 U.S. Dist. LEXIS 222673 (S.D. Fla. Sept. 20, 2018, docketed Sept. 21, 2018) (same); Cartier Int'l A.G. v. Replicapaneraiwatches.cn, No. 17-cv-62401-MOORE, 2018 U.S. Dist. LEXIS 225476 (S.D. Fla. Jan. 2, 2018) (same); Chanel, Inc. v. Aestheticase.com, No. 15-cv-60846-COHN, 2015 U.S. Dist. LEXIS 180207 (S.D. Fla. April 24, 2015) (same).

[5] See e.g., Michael Kors, LLC v. ActiveJewelry, No. 15-cv-61659-MGC, 2015 U.S. Dist. LEXIS 180216 (S.D. Fla. Aug. 18, 2015) (Order prohibiting Defendants from transferring e-commerce stores operating via marketplace platform); Abercrombie & Fitch Trading Co. v. 7starzone.com, No. 14-cv-60087-MGC, 2014 U.S. Dist. LEXIS 12211 (S.D. Fla. Jan. 31, 2014) (Order prohibiting Defendants from transferring domain names). See also Abercrombie & Fitch Trading Co. v. bao li Store, Case No. 20-cv-60167-MGC (S.D. Fla. Jan. 31, 2020) (Order prohibiting Defendants from transferring e-commerce stores operating via marketplace platform); Apple Corps Limited v. avila norma shop, Case No. 19-cv-61858-MGC (S.D. Fla. Sept. 10, 2019) (same); Louis Vuitton Malletier v.Caromy&LV, Case No. 19-cv-61021-MGC (S.D. Fla. Apr. 26, 2019) (same); Cartier Int'l A.G. v. BUY1NG, Case No. 19-cv-60406-MGC (S.D. Fla. Feb. 26, 2019) (same). Accord Parsons Xtreme Golf, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", No. 19-cv-60310-BLOOM, 2019 U.S. Dist. LEXIS 79074 (S.D. Fla. Feb. 7, 2019, docketed Feb. 8, 2019) (same); YETI Coolers, LLC v. Allramblerdeal.com, No.18-62811-CIV-DIMITROULEAS, 2018 U.S. Dist. LEXIS 225651 (S.D. Fla. Nov. 21, 2018, docketed Nov. 26, 2018) (same); Gucci Am., Inc. v. BGAADB, No. 18-cv-62227-UNGARO, 2018

### 3.    An *Ex Parte* Order Restraining Transfer of Assets is Appropriate.

In addition to an order temporarily restraining Defendants' practices, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets.  Goyard has demonstrated above that it will likely succeed on the merits of its claims. As such, under 15 U.S.C. § 1117, Goyard will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting scheme. 15 U.S.C. § 1117(a) (2018).  Due to the deceptive nature of the counterfeiting business, and Defendants' deliberate violations of federal trademark laws, Goyard respectfully requests this Court grant additional *ex parte* relief identifying payment accounts and restraining the transfer of all monies held or received by Amazon, ContextLogic, Dunhuang Group, and Camel FinTech Inc, or other financial institutions for the benefit of any one or more of the Defendants. (*See* Wiborg-Rodriguez Decl. ¶¶ 4-6.)  See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc., 80 F.3d 749 (2d Cir. 1996); see also SEC v. ETS Payphones, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in cases where an equitable interest is claimed. Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 144 L. Ed. 2d 319, 119 S. Ct. 1961 (1999). Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to courts to restrain assets *pendente lite.* See Mason Tenders Dist. Council Pension Fund v. Messera, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all the Circuit Courts have held that Rule 65 is available to freeze assets *pendente lite* under some set of circumstances").

In light of the illicit nature of the counterfeiting business and the ability of counterfeiters to practically eliminate their evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of such asset restraints in cases involving counterfeiting defendants.

---

U.S. Dist. LEXIS 222673 (S.D. Fla. Sept. 20, 2018, docketed Sept. 21, 2018) (same); Cartier Int'l A.G. v. Replicapaneraiwatches.cn, No. 17-cv-62401-MOORE, 2018 U.S. Dist. LEXIS 225476 (S.D. Fla. Jan. 2, 2018) (same); Chanel, Inc. v. Aestheticase.com, No. 15-cv-60846-COHN, 2015 U.S. Dist. LEXIS 180207 (S.D. Fla. April 24, 2015) (same).

See, e.g. Levi Strauss & Co. v. Sunrise Int'l Trading, 51 F.3d 982 (11th Cir. 1995); Reebok Int'l Ltd. v. Marnatech Enter., 737 F. Supp. 1521 (S.D. Cal. 1989), aff'd, 970 F.2d 552 (9th Cir. 1992). In Levi Strauss, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under 15 U.S.C. § 1117. Levi Strauss, 51 F.3d at 987. Distinguishing Levi Strauss from two earlier cases not involving Lanham Act claims, the Court emphasized the necessity of the restraint holding that a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." Id. citing Federal Trade Commission v. United States Oil and Gas Corp., 748 F.2d 1431, 1433-34 (11th Cir. 1984) (district court may exercise its full range of equitable powers, including a preliminary asset restraint, to ensure that permanent equitable relief will be possible). Indeed, courts may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested.  See S. E. C. v. Lauer, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006) (noting that there is no requirement for the restrained assets be traceable to the fraudulent activity underlying a lawsuit); Levi Strauss & Co. v. Sunrise Int'l Trading, 51 F.3d at 987-88 (upholding asset restraint, including assets not linked to the profits of the alleged illegal activity, noting the defendants may request the court exempt any particular assets); Kemp v. Peterson, 940 F.2d 110, 113-14 (4th Cir. 1991) (district court may restrain assets not specifically traced to illegal activity). In cases in this district substantially similar to this matter, this Court and others have entered the precise relief sought herein.[6]

---

[6] See e.g., Michael Kors, LLC v. ActiveJewelry, 2015 U.S. Dist. LEXIS 180216, Case No. 15-cv-61659-MGC (S.D. Fla. Aug. 18, 2015) (Order granting TRO, requiring financial institution(s) to restrain funds in defendants' payment accounts to preserve assets to satisfy Plaintiff's requested relief); See also Abercrombie & Fitch Trading Co. v. bao li Store, Case No. 20-cv-60167-MGC (S.D. Fla. Jan. 31, 2020) (Order prohibiting Defendants from transferring e-commerce stores operating via marketplace platform); Apple Corps Limited v. avila norma shop, Case No. 19-cv-61858-MGC (S.D. Fla. Sept. 10, 2019) (same); Louis Vuitton Malletier v.Caromy&LV, Case No. 19-cv-61021-MGC (S.D. Fla. Apr. 26, 2019) (same); Cartier Int'l A.G. v. BUY1NG, Case No. 19-cv-60406-MGC (S.D. Fla. Feb. 26, 2019) (same).  Accord Parsons Xtreme Golf, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", No. 19-cv-60310-BLOOM, 2019 U.S. Dist. LEXIS

Similarly, in <u>Reebok v. Marnatech</u>, the District Court granted Reebok a limited restraint of the defendants' assets for the purpose of preserving those assets, thus ensuring the availability of a meaningful accounting after trial. <u>Reebok Int'l Ltd.</u>, 737 F. Supp. at 1526. In affirming the decision, the Ninth Circuit determined that the plaintiff met its burden of demonstrating: (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendants might hide their allegedly ill-gotten profits if their assets were not frozen. <u>Reebok Int'l Ltd.</u>, 970 F.2d 552, 563 (9th Cir. 1992). Moreover the Court reasoned: "because the Lanham Act authorizes the District Court to grant Reebok an accounting of [defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief." <u>Reebok Int'l Ltd.</u>, 970 F.2d. at 559; <u>see also</u> <u>Republic of Philippines v. Marcos</u>, 862 F.2d 1355, 1364 (9th Cir. 1988), cert. denied, 490 U.S. 1035 (1989) ("[a] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies").

Using the power to issue provisional remedies ancillary to their authority to provide final equitable relief, numerous courts have granted orders restraining defendants from transferring their assets under trademark infringement claims. <u>See e.g.</u>, <u>Levi Strauss</u>, 51 F.3d at 987; <u>Reebok Int'l Ltd.</u>, 970 F.2d at 559.  Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued *ex parte*. <u>See</u> <u>F.T. Int'l Ltd v. Mason</u>, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); <u>CSC Holdings, Inc. v.</u>

---

79074 (S.D. Fla. Feb. 7, 2019, docketed Feb. 8, 2019) (same); <u>YETI Coolers, LLC v. Allramblerdeal.com</u>, No.18-62811-CIV-DIMITROULEAS, 2018 U.S. Dist. LEXIS 225651 (S.D. Fla. Nov. 21, 2018, docketed Nov. 26, 2018) (same); <u>Gucci Am., Inc. v. BGAADB</u>, No. 18-cv-62227-UNGARO, 2018 U.S. Dist. LEXIS 222673 (S.D. Fla. Sept. 20, 2018, docketed Sept. 21, 2018) (same); <u>Cartier Int'l A.G. v. Replicapaneraiwatches.cn</u>, No. 17-cv-62401-MOORE, 2018 U.S. Dist. LEXIS 225476 (S.D. Fla. Jan. 2, 2018) (same); <u>Chanel, Inc. v. Aestheticase.com</u>, No. 15-cv-60846-COHN, 2015 U.S. Dist. LEXIS 180207 (S.D. Fla. April 24, 2015) (same).

Greenleaf Elec., Inc., 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets).

In this case, Defendants' blatant violations of federal trademark laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets.  Moreover, as Defendants' businesses are conducted anonymously over the Internet, Goyard has additional cause for *ex parte* relief, as Defendants may easily secret or transfer their assets without the Court's or Goyard's knowledge.

> **D.    A Bond Should Secure the Injunction.**

Because of the strong and unequivocal nature of Goyard's evidence of counterfeiting and infringement, Goyard respectfully requests this Court require it to post a bond of no more than ten thousand dollars ($10,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## IV.    CONCLUSION

In view of the foregoing, Plaintiff, Goyard St-Honore, respectfully requests this Court grant its *Ex Parte* Application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the temporary restraining order. Additionally, in the event the application is granted, Plaintiff respectfully requests the Court permit the parties, including witnesses, to appear and testify as necessary telephonically at the hearing on Plaintiffs' Motion for a Preliminary Injunction, in accordance with Administrative Order 2020-53.  Furthermore, due to the time provisions of a temporary restraining order, in the event the application is granted, Goyard respectfully requests the Court provide a copy of the temporary restraining order to Goyard's counsel via e-mail at raquel@smgpa.net so that Goyard may immediately effectuate any relief ordered therein and provide Defendants' proper notice of the order and any subsequent hearing date.

DATED: September 21, 2020.        Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **T. Raquel Wiborg-Rodriguez**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiff,
GOYARD ST-HONORE

## SCHEDULE "A"
## DEFENDANTS BY NUMBER, SELLER ID, AND FINANCIAL ACCOUNTS

| Def. No. | Defendant / Seller ID | Financial Account Information: Store Number / Merchant ID | Infringing Product ASIN [7] /Number |
|---|---|---|---|
| 1 | Crabag | A26E1XA0IV8UKN | B084GPJX66 |
| 2 | DFSFOE | A2W4OMPKLZAIJX | B07RP9D76B |
| 3 | FallDo | A7NLMXS358Q21 | B082SRGYVL |
| 4 | hjghjkyhu | A2XG17D08F618K | B07ZT36WWT |
| 5 | INfsnOWx | A1DM1LAIWYLG5F | B07YMX51F1 |
| 6 | Itbag | A138OFDLBSHISJ | B082SQP9TM |
| 7 | KaiSasi | A3I0Z4REDU7BEB | B0842LYCGY |
| 8 | Kerag | AT3G2OWDMO16S | B084GNZ68G |
| 9 | Klisa Losa | A25NA8YP7MGFYD | B083TNMYQD |
| 10 | KunChick | A2J3DW8JJ53VXH | B084GP36XF |
| 11 | Layert | A2G0ERVMEWLNF5 | B085CBWQGJ |
| 12 | Linelie | A4B7NQJ2NATQZ | B08DR3N97K B08DR5XMKK |
| 13 | wenyienyunyingtongyongpin | A1DBSBC29UBDIE | B0842LTL2J |
| 14 | xingzhouwangluokeji | AP31YR1PEM9MI | B0842M1H7V |
| 15 | yrdudfyu7t | A29WEMGK7ZQTS1 | B086995C8H |
| 16 | ZBW-Shopping Mall | A2UX2NFFT7SIKT | B07THKFVKM |
| 17 | ZooZooZ | A21MVISG7KLJXS | B084GNZZDR |
| 18 | 2016-Flower | 57f652e22e8dc95af9625f73 | 5edf48cf30644f4397dc86db |
| 19 | AllisonHerring | 5eae74bb7fc967f04323d997 | 5eb94d468bdf6501fd06028b |
| 20 | AshleighJuenKidsFashion | 59c13bbd9fbc5126e4be3e68 | 5e3bcdd3daadf71605473423 |
| 21 | Baobaokingdom | 5e5c641b6ac64e9060f9de18 | 5e5e54cdcef11e0fc06c379f |
| 22 | ccmmstudio | 57f111dbe41db110026666f3 | 5e4378cf482e241e20a6be94 |
| 23 | coriastore | 5e5737f3579a4416037f6224 | 5e5dc697ce1d4a2109d4ff84 |
| 24 | gorunningsport | 5a3bbecc6ecee03f5755e12b | 5f18f75338b45226edb0b78d |
| 25 | KobeloveGiGi | 5e6300f400ff3712548f3e2b | 5e8d3c2bfcc85c077489ae51 |
| 26 | manufacturing industry | 584abbafe3476b08a3a3f242 | 5e4f88855dafd33d6c01d4d9 |
| 27 | MisaelStore | 5e606b84d0e9af268015787c | 5e7d6697de9cbf280e61fd7b |
| 28 | RachelJStarks | 599ea16230e1f31f769fb871 | 5e5e4f5d2f20777092d7c0ed |
| 29 | Red Starry Sky | 5e572f12402bad25b33f41a1 | 5e66f47789b76421e445f564 |

[7] The Amazon Standard Identification Number ("ASIN") for the various Goyard branded products were obtained either from the Product Information / Description segments or the URLs of the infringing Goyard branded items, all of which are included in Composite Exhibit "1" hereto.  The ASIN is a unique 10-digit alphanumeric identifier Amazon assigns to each product. Sellers can create a variational relationship between products in regards to name, size/count, color, style, scent, etc.  When doing so, the ASIN identified in the Product Information / Description segments represents the core product and a different ASIN may be assigned based on variations thereof, as identified in the URLs.

| Def. No. | Defendant / Seller ID | Financial Account Information: Store Number / Merchant ID | Infringing Product ASIN[7] /Number |
|---|---|---|---|
| 30 | SHASTABOM | 5dfb7f49fffb6e1f583c0f9d | 5e40c2482261bc3e85d24fa4 |
| 31 | sportrunfast | 5a3862fe518c1c02fbb3b94c | 5f18f21e81374f22f9f2a81d |
| 32 | supercoolshop | 59d25752989ae00ff7e140d6 | 5f0e62684552870802697455 |
| 33 | x916f521 | 5b1e79eb7752c8249e86e430 | 5d43d8570c7d817b750b4a5e |
| 34 | zhangjianjun | 583eeb56f097ec1b8a861212 | 5e16a644d4ec83085f9c568f |
| 35 | abc32188888 | 21296731 | 509637399 |
| 36 | Aiqiao988 | 21403847 | 527782427 |
| 37 | Ajshoesstore | 20998222 | 515689392 |
| 38 | Bags252 | 14826857 | 431008876 |
| 39 | Bags257 | 20121990 | 530043719 |
| 40 | Bags258 | 20121761 | 431045732 |
| 41 | Bagzhao521 | 21159327 | 454570571 |
| 42 | Besthandbag368 | 20635560 | 512468160 |
| 43 | Bfbm665817 | 21423869 | 514623218 |
| 44 | Broosnan6 | 20974868 | 526599697 |
| 45 | Broosnan8 | 21177048 | 526602818 |
| 46 | Caihong3698 | 21417007 | 515750805 |
| 47 | Cfc778 | 21150423 | 547075953 |
| 48 | Chenguib | 20808357 | 478241429 |
| 49 | Cicilylovely | 20119322 | 507103514 |
| 50 | Cuppozoo | 20951757 | 463507395 |
| 51 | Cy003 | 20082315 | 477066141 |
| 52 | Cy004 | 20087158 | 526861706 |
| 53 | Damson3219 | 21248935 | 528085522 |
| 54 | Dapiao | 21195686 | 506964243 |
| 55 | Daqiao2020 | 21422731 | 511112296 |
| 56 | Dhgate_number1 | 21430057 | 516675874 |
| 57 | Dichen | 21229513 | 511173408 |
| 58 | Duobao20188 | 21430903 | 514414201 |
| 59 | Fanxunchun168 | 21231632 | 538416791 |
| 60 | Fashionbags566 | 20983780 | 420494046 |
| 61 | Fashionbags999 | 20436237 | 463991623 |
| 62 | Fenchu | 20331296 | 461155831 |
| 63 | fire_0614 | 21056017 | 510291723 |
| 64 | Fr006 | 20118899 | 430312807 |
| 65 | Fr008 | 20131156 | 529990588 |
| 66 | Freda6825 | 14228632 | 540355202 |
| 67 | Goyardbag111 | 21227716 | 453379246 |
| 68 | goyardwomenbag2020 | 21536078 | 554144845 |
| 69 | Hai09 | 21357570 | 490905851 |
| 70 | Handbagstore8899 | 21430794 | 514942348 |
| 71 | Hanfei012 | 21072336 | 432061818 |

| Def. No. | Defendant / Seller ID | Financial Account Information: Store Number / Merchant ID | Infringing Product ASIN[7] /Number |
|---|---|---|---|
| 72 | Helen0623 | 20112541 | 396554473 |
| 73 | Hjf8866 | 21254474 | 455518408 |
| 74 | Hot_spinner | 20717822 | 419382223 |
| 75 | Hotfashion16 | 21427645 | 515525639 |
| 76 | Huali5188 | 21423182 | 513186014 |
| 77 | Huang555885 | 20521984 | 404504016 |
| 78 | Hzg52000 | 21385632 | 538603207 |
| 79 | It3cgoods | 21216157 | 482323899 |
| 80 | Iwalkers06 | 20832785 | 454812340 |
| 81 | Jianshuo20030303 | 21291251 | 475182336 |
| 82 | Jixiang618 | 21075741 | 515102558 |
| 83 | Kaiyi527 | 21127583 | 454795328 |
| 84 | Kangaroo9 | 20910147 | 472361574 |
| 85 | Kindly10010 | 21039784 | 432966963 |
| 86 | Kuaileshiguang369369 | 21434517 | 516571790 |
| 87 | Kuaileshiguang68688 | 21434492 | 516579417 |
| 88 | lameijin | 21527941 | 550454374 |
| 89 | Ldm199103 | 21421539 | 516514104 |
| 90 | Levana10010 | 21039775 | 457204517 |
| 91 | Lian587 | 21088244 | 452892975 |
| 92 | Lifei2019 | 21292802 | 472658297 |
| 93 | lihailawodeguo | 21488469 | 532916688 |
| 94 | Linyii | 21208723 | 459139719 |
| 95 | liujingang2_ | 21432348 | 563079353 |
| 96 | Liuju10 | 21155848 | 526792802 |
| 97 | lucky_guy | 14498393 | 543299635 |
| 98 | Luxurybrand004 | 21031474 | 458662668 |
| 99 | Luxuryseller6666 | 21258317 | 465655194 |
| 100 | Lxlfc9999 | 21468050 | 530475435 |
| 101 | Masyi86 | 21431549 | 514479727 |
| 102 | Meng3369 | 21507001 | 537005403 |
| 103 | Mingliang3699 | 21423475 | 511535310 |
| 104 | Mk002 | 20021203 | 477418417 |
| 105 | Mkors | 21028676 | 478071417 |
| 106 | Moou736 | 21267442 | 533828216 |
| 107 | Mudan7626 | 21164955 | 533751537 |
| 108 | Mytoto | 21231851 | 450081213 |
| 109 | N6k5839 | 21423854 | 513775477 |
| 110 | Newbags2019 | 21196031 | 475714746 |
| 111 | Nfcx2273 | 21424092 | 515534548 |
| 112 | Olivia012 | 21194684 | 541944705 |
| 113 | Ptdh4 | 21471646 | 527431737 |

| Def. No. | Defendant / Seller ID | Financial Account Information: Store Number / Merchant ID | Infringing Product ASIN[7] /Number |
|---|---|---|---|
| 114 | Qinghua521 | 21173873 | 530099649 |
| 115 | Qwe1241163623 | 21418555 | 509120905 |
| 116 | Romantic666888 | 21218568 | 528084902 |
| 117 | Ruixue2020f | 21427822 | 513228431 |
| 118 | Saleoff | 21109503 | 503833160 |
| 119 | Sanxun3 | 21094067 | 458397751 |
| 120 | Sebentiaoxin20 | 21421052 | 509380649 |
| 121 | Shanghaihongyu | 21312441 | 510311205 |
| 122 | Sun_bloom | 21089310 | 446211181 |
| 123 | Sunflowerc | 20708650 | 407170590 |
| 124 | Sunflowergift | 20819532 | 416697274 |
| 125 | Superseller816 | 20335666 | 512473596 |
| 126 | Supre_bags | 21110146 | 426579781 |
| 127 | Tanglaoya88 | 21427628 | 515530559 |
| 128 | Taotao168 *a/k/a* Dress Bikini Bag | 14372407 | 431025134 |
| 129 | Thankyou123 | 21388736 | 511815081 |
| 130 | Vity8 | 21238874 | 490613391 |
| 131 | Watch1888 | 21066184 | 559193270 |
| 132 | Watch5858 | 21272362 | 510254298 |
| 133 | Winnie00 | 20244036 | 445791583 |
| 134 | Winniediscountshop | 20462016 | 426438559 |
| 135 | Wudaqi | 20683144 | 431821832 |
| 136 | Xiaoqiao2020 | 21422870 | 510733745 |
| 137 | Xingfujixiang888 | 20137570 | 529384237 |
| 138 | Xishengtai2019 | 21252765 | 461800585 |
| 139 | Y67b66128 | 21424094 | 514198178 |
| 140 | Yc6h881858 | 21424099 | 514925215 |
| 141 | Yongyongxia | 21194992 | 467564635 |
| 142 | Youyi123 | 20792206 | 493019124 |
| 143 | Youyouzizai888899999 | 21434520 | 516567051 |
| 144 | Yuandan2020 | 21427770 | 513210717 |
| 145 | Yunian78363 | 21430728 | 514327905 |
| 146 | Yunqi918 | 21433348 | 515422814 |
| 147 | Zhouxinxin002 | 21054442 | 527550328 |
| 148 | Zhujianqiang11 | 21129509 | 454081236 |
| 149 | Zhuzi88 | 21300040 | 514851677 |
| 150 | Zwm222 | 21471356 | 527271366 |
| 151 | Zxk888 | 21225483 | 512644711 |