**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 20-61915-CIV-COOKE

GOYARD ST-HONORE,

       Plaintiff,

vs.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

       Defendants.

_____/

**DECLARATION OF T. RAQUEL WIBORG-RODRIGUEZ IN SUPPORT OF
PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY
RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND
ORDER RESTRAINING TRANSFER OF ASSETS**

     I, T. Raquel Wiborg-Rodriguez, declare and state as follows:

     1.     I am an attorney for Plaintiff, Goyard St-Honore ("Goyard" or "Plaintiff") in the above captioned action.  I submit this declaration in support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "Application for Temporary Restraining Order") against Defendants, the Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A" to the Application for Temporary Restraining Order ("Defendants").  I am personally knowledgeable of the matters set forth in this declaration and, if called upon to do so, I could and would competently testify to the following facts set forth below.

**RE: INVESTIGATION OF DEFENDANTS**

     2.     On Goyard's behalf, my firm retained Invisible Inc, a licensed private investigative firm, to investigate the suspected sales of counterfeit Goyard-branded products by Defendants, and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit Goyard branded products.  At the conclusion of the

investigation, I received the detailed web pages and evidence photos[1] Invisible Inc captured and downloaded reflecting each Goyard-branded product ordered[2] via the e-commerce stores operating under Defendants' seller identification names identified on Schedule "A" to the Application for Temporary Restraining Order (the "Seller IDs") and provided copies of the same to Goyard's representative, Jean-Laurent Thierry, for review.   True and correct copies of the web page captures and photographs produced by Invisible Inc, and provided to my firm thereafter, reflecting samples of the Goyard branded goods Defendants are promoting, offering for sale, and selling via the e-commerce stores operating under the Seller IDs are attached as Composite Exhibits "1," "2," and "3" to the Declaration of Kathleen Burns in Support of Plaintiff's Application for Temporary Restraining Order.

**RE: *EX PARTE* RELIEF**

3.     It has been my experience that in multiple litigations involving online counterfeiting that, in the absence of a temporary restraining order without notice, Defendants can and will significantly alter the status quo before the Court can determine the parties' respective rights. In particular, the Internet based e-commerce stores and Seller IDs at issue herein are under Defendants' complete control. As such, Defendants have the ability to modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs. Such modifications can happen in a short span of time after Defendants are provided with notice of this action. Thus, Defendants can easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's Application for Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo.  As Defendants engage in illegal trademark counterfeiting activities, Goyard has no reason to believe Defendants will make their assets available for recovery pursuant to an accounting of profits or will adhere to the

---

[1]  I received evidence photographs of some of the Goyard branded items Plaintiff's investigator received from certain Defendants and provided those to Plaintiff's representative.

[2]    Invisible was instructed not to transmit the funds to finalize the sale for the orders from some of the Defendants so as to avoid adding money to Defendants' coffers.

authority of this Court any more than they have adhered to federal trademark law.  This case is being filed on an *ex parte* basis to prevent such an injustice from occurring herein.

**RE: RESTRAINT OF ASSETS**

4.      Defendant Numbers 1-17 use the non-party Internet marketplace platform, Amazon.com, Inc. ("Amazon") to support and drive consumer traffic to their counterfeiting operations.  Amazon is an e-commerce marketplace that allows Defendants to conduct their commercial transactions privately via Amazon's payment processing and retention service, Amazon Payments, Inc. As such, Defendants' payment information is not publicly disclosed. However, because Amazon also operates as a money transmitter for sales made on Amazon, it has the ability to identify and restrain the payment accounts associated with Defendant Numbers 1-17.

5.      Defendant Numbers 18-34 use the non-party e-commerce marketplace platform, Wish.com, which is operated by ContextLogic Inc. ("ContextLogic") to support and drive consumer traffic to their counterfeiting operations. Individual merchants operating through the Wish.com marketplace platform have their payments processed on their behalf using an aggregate escrow account in the name of WISH (ContextLogic Inc.), which may appear as "PAYPAL *Wish" as the payee on a PayPal receipt. The Wish.com platform itself is not the ultimate merchant, but because it accepts and processes payments on behalf of its individual merchants, it is the only party which can tie a particular Seller ID to a reported transaction and identify the merchant's funds held in sub-accounts within the aggregate account.

6.      Defendant Numbers 35-151 use the non-party Internet marketplace platform, DHgate.com, to support and drive consumer traffic to their counterfeiting operations. Individual merchants operating through the DHgate.com marketplace platform have their payments processed on their behalf via DHgate.com's third-party payment platform, DHpay.com, which may appear as "DHGATE" on a cardholder's credit card statement. The DHgate.com and DHpay.com platforms are operated by the Dunhuang Group, who utilizes Camel FinTech Inc to process transactions and deal with refunds and chargebacks on behalf of DHgate.com to its customers. Although the DHgate.com platform itself is not the ultimate merchant, all purchases on DHgate.com are automatically made via their escrow process, such that a reported transaction tied to a particular Seller ID and/or store

number, and the merchant's funds associated therewith, can be identified within the aggregate escrow account.

7.      Multiple past actions filed by Goyard and other brand owners have demonstrated that counterfeiters often do not identify the payment accounts they are using in attempts to evade detection. However, I reasonably believe that the above named entities have the ability to and will in fact comply with a temporary restraining order of the type now sought by Goyard.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed the 21st day of September, 2020, at Fort Lauderdale, Florida.

T. Raquel Wiborg-Rodriguez